**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Randy Lee Weldon, | ) | |
| | ) | Case No. 1:23-cr-190 |
| Defendant, | ) | |
| | ) | |
| Randy Lee Weldon, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:25-cv-268 |
| vs. | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is the Defendant's "Motion to Vacate under 28 U.S.C. § 2255" filed on November 24, 2025. See Doc. No. 65. The Government filed a response in opposition to the motion on January 28, 2026. See Doc. No. 76. The Defendant filed a reply brief on March 3, 2026. See Doc. No. 77. For the reasons outlined below, the motion is denied.

## I.    BACKGROUND

On October 25, 2023, a federal grand jury charged Weldon in a two-count indictment with one count of possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and one count of possession of an illegal firearm in violation of 26 U.S.C. §§ 5845(a), 5861(c), and 5871. See Doc. No. 2. On July 25, 2024, Weldon pled guilty to Count One of the indictment pursuant to a written plea agreement. See Doc. No. 37. Count Two was dismissed.

1

The Presentence Investigation Report ("PSR") revealed a total offense level of 25 and a criminal history category of IV, which produced an advisory Sentencing Guideline range of 84 to 105 months.  See Doc. No. 49, ¶ 93.  The Court adopted the findings from the PSR.  The Government recommended a low-end guideline range sentence.  Defense counsel requested a time-served sentence.  On November 7, 2024, the Court varied downward and sentenced Weldon to 48-months of imprisonment and three years of supervised release.  See Doc. No. 55.  Weldon did not appeal.

On November 24, 2025, Weldon filed a motion to vacate or set aside his sentence under 28 U.S.C. § 2255.  See Doc. No. 65.  He alleges ineffective assistance of counsel.  The motion has been fully briefed and is ready for consideration.

II.      **STANDARD OF REVIEW**

28 U.S.C. § 2255 provides a federal prisoner an avenue for relief upon a showing that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose such sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a); see also King v. United States, 595 F.3d 844, 852 (8th Cir. 2010).  This requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962).  A 28 U.S.C. § 2255 motion is not a substitute for a direct appeal and is not the proper way to complain about simple trial errors. Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994).  A 28 U.S.C. § 2255 movant "must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady,

456 U.S. 152, 166 (1982).  Section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Davis, 417 U.S. at 343.  Section 2255 is also not an opportunity to relitigate issues that were argued and rejected on direct appeal.  United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981) ("It is well-settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255."); see also Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003).

A prisoner is entitled to an evidentiary hearing on a Section 2255 motion unless the motion, files, and records of the case conclusively show that the prisoner is not entitled to relief. 28 U.S.C. § 2255; Engelson v. United States, 86 F.3d 238, 240 (1995).  A Section 2255 motion "may be dismissed without hearing if (1) movant's allegation, accepted as true, would not entitle the petitioner to relief, or (2) [the] allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact." See Winters v. United States, 716 F.3d 1098 (2013); see also Holloway v. United States, 960 F.2d 1348, 1358 (8th Cir. 1992) (a single, self-serving, self-contradicting statement is insufficient to render the motions, files and records of the case inconclusive); Smith v. United States, 618 F.2d 507, 510 (8th Cir. 1980) (mere statement of unsupported conclusions will not suffice to command a hearing).

## III.    LEGAL DISCUSSION

Weldon raises several related claims of ineffective assistance of counsel.  The primary contention is that defense counsel[1] failed to adequately investigate the case.  In addition, Weldon

---

[1]Ryan Sandberg was the attorney appointed to represent Weldon in this case.  Sandberg handled all aspects of the case save for the sentencing hearing which was conducted by Ashley Flagstad, who is another experienced

contends he did not know the firearms were in his home and thus his guilty plea was unknowing.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. To be eligible for habeas relief based on ineffective assistance of counsel, a defendant must satisfy the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, a defendant must establish that defense counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. This requires showing that counsel made errors so serious that defense counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. If the underlying claim (i.e., the alleged deficient performance) would have been rejected, defense counsel's performance is not deficient. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining defense counsel's performance from counsel's perspective at the time of the alleged error. Id.

Second, it must be demonstrated that defense counsel's performance prejudiced the defense. Strickland, 466 U.S. at 687. In other words, under this second prong, it must be proven that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003). An increased prison term may constitute prejudice under the *Strickland* standard. Glover v. United States, 531 U.S. 198, 203 (2001).

---

attorney from the same law firm as Sandberg. The Court refers to them collectively as "defense counsel."

There is a strong presumption that defense counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; Vogt v. United States, 88 F.3d 587, 592 (8th Cir. 1996).  A court reviewing defense counsel's performance must make every effort to eliminate hindsight and second-guessing.  Strickland, 466 U.S. at 689; Schumacher v. Hopkins, 83 F.3d 1034, 1036-37 (8th Cir. 1996).   Under the *Strickland* standard, strategic decisions that are made after a thorough investigation of both the law and facts regarding plausible options are virtually unchallengeable. Strickland, 466 U.S. at 690.  Strategic decisions and trial strategy are generally entrusted to defense counsel as a matter of professional discretion.  United States v. Orr, 636 F.3d 944, 952 (8th Cir. 2011).  When the defendant asserts that there are multiple deficiencies, each claim is reviewed independently.  Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006).  There is no "cumulative error" rule applied to assistance of counsel claims.  United States v. Robinson, 301 F.3d 923, 925 n.3 (8th Cir. 2002).

Weldon's contentions that defense counsel failed to properly investigate the case and his plea of guilty was unknowing are clearly refuted by the record, the affidavit of defense counsel, and the letter from Leesa Dustin that Weldon submitted in support of his motion.

Weldon pled guilty pursuant to a written plea agreement in which he acknowledged his plea was voluntary and which he signed.  See Doc. No. 33.  At the change of plea hearing on July 25, 2024, the Government recited that while Weldon was being interviewed, as a part of an investigation by the drug task force, he admitted that he had some methamphetamine and some firearms at his residence.  See Doc. No. 75, p. 5.  A search of Weldon's house resulted in the seizure of twelve firearms, including a short-barreled shotgun and a handgun that had been reported stolen, and a small amount of methamphetamine.  Id.  Weldon did not object to the

Government's factual recitation. Weldon acknowledged that he was well represented by defense counsel. See Doc. No. 75, pp. 22-23. Weldon did not express any displeasure with defense counsel, any reservations about his guilty plea, nor any suggestion that he did not have possession of the 12 firearms found in his house.

The Presentence Investigation Report ("PSR") was filed on October 29, 2024. See Doc. No. 49. The PSR described the offense conduct as follows:

6.  On or about May 11, 2023, Randy Lee Weldon agreed to allow his friend, Leesa Dustin (Leesa) to store her firearms at his home in Wheelock, ND. According to the defendant, Leesa was experiencing a marital dispute with her husband and requested a place to stay and store her guns temporarily. The defendant explained he was not residing at his residence in Wheelock during this time, instead living out of a camper parked at his place of business. Mr. Weldon provided Leesa with the key to his home and allowed her to keep her firearms there, even after she left the residence and returned to her own home. The defendant acknowledged he should not have sanctioned this given his felon status, but explained he was actively using methamphetamine during this time period, which impacted his decision-making abilities.

7.  On May 12, 2023, law enforcement interviewed the defendant regarding a report received suggesting the defendant possessed methamphetamine at his residence in Wheelock, ND. During the interview, Mr. Weldon disclosed he had methamphetamine and firearms at his home. Based on the information obtained in the interview and because the defendant is a felon prohibited from the possession of firearms, investigators applied for and received a search warrant for the defendant's residence.

8.  The same day, the search warrant was executed at the defendant's home. Law enforcement discovered several items of drug paraphernalia containing methamphetamine residue, digital scales, along with a baggie containing approximately four grams of methamphetamine. [Twelve] firearms and ammunition were also located during the search.

See Doc. No. 49, ¶¶ 6-8. When Weldon was interviewed for the PSR, "the defendant stated he knew he should not have allowed guns to be kept in his home, but that his judgement was clouded around the time of the instant offense due to his methamphetamine use. He further

6

stated there was 'no excuse' for his decision to keep firearms in his possession." See Doc. No. 49, ¶ 12.  Weldon did not object to the factual background set forth in the PSR.

Sentencing took place on November 5, 2024.  See Doc. No. 54.  Neither party had any objections to the PSR.  See Doc. No. 73, p. 4.  The defense called three witnesses, including Leesa Dustin.  In her testimony, Ms. Dustin did not address the firearms found in Weldon's home, claim the firearms were hers, or explain how the firearms came to be in his home.  See Doc. No. 73, pp. 9-12.  When Weldon addressed the Court he stated as follows:

> And the situation with the guns in the house, I understand, you know, I could -- I can make excuses all day, but the fact of the matter is I knew they weren't supposed to be there, and I did allow them to be put there. Being blinded per se by the drug use, I kind of just -- in my mind I was telling myself, oh, it's okay because I don't even stay there. You know, I stay at my camper at my business. But the fact of the matter is that's my fault that they were there, and I do take full responsibility for that... .

See Doc. No. 73, pp. 23-24.  Weldon did not make any complaints about defense counsel or claims of innocence.  The Court adopted the guideline calculations from the PSR finding an overall offense level of 25 and a criminal history category of IV resulting in an advisory Sentencing Guideline range of 84-105 months.  See Doc. No. 73, p. 28.  The Court varied downward and sentenced Weldon to 48-months of imprisonment and 3 years of supervised release.  See Doc. No. 73, p. 29.  None of the parties appealed the sentence imposed.

In response to Weldon's ineffective assistance claims, defense counsel Ryan Sandberg provided a sworn affidavit.  See Doc. No. 76-1, pp. 1-2.  Sandberg explains in his affidavit the discussions that he had with Weldon regarding his possession of the firearms in question. Sandberg's affidavit rebuts all of Weldon's assertions in his motion.  Most importantly, Sandberg stated in his affidavit, "I did ask him if he knew the firearms were in his place.  He did say yes," and "[i]f Randy had told me during my conversations with him that he did not know

the firearms were at his residence at the time the police searched his home, I would have looked into his claim.  I would have spoken to this female." See Doc. No. 76-1, ¶¶ 1 and 6.  In addition, Sandberg relates how Weldon admitted to possessing a firearm and drugs during a traffic stop, and on May 12, 2023, admitted to law enforcement that he had drugs and firearms in his Wheelock residence. See Doc. No. 76-1, ¶¶ 2 and 4.  This latter statement led law enforcement to obtain a search warrant which resulted in the seizure of the firearms Weldon was charged with possessing.  The search of Weldon's residence leading to the federal charges occurred on May 12, 2023.  Thus, a defense based on lack of knowledge or possession was not a viable option and there was no reason to investigate whether Weldon knew about the firearms found in his residence.  Sandberg also states that Weldon never asked him to withdraw his guilty plea.

Weldon filed a letter from Leesa Dustin in support of his motion and heavily relies upon it to validate his clams. See Doc. No. 66-2.  Dustin claims the 12 firearms belonged to her.  According to Dustin's letter, the altercation leading to her moving the 12 firearms to Weldon's house occurred on November 14, 2023, and she took all her firearms to Weldon's house that same evening.  This is not possible unless there were two separate incidents because it would have occurred after law enforcement searched Weldon's house.

The search of Weldon's house occurred on May 12, 2023.  He was indicted on October 25, 2023.  The change of plea hearing occurred on July 25, 2024. See Doc. No. 37.  The sentencing hearing occurred on November 5, 2024. See Doc. No. 54.  The Dustin letter is dated May 3, 2025, at the top of the letter and May 27, 2025, at the bottom by the signature line.  In his declaration, Weldon claims that he obtained this statement after the change of plea hearing and before the sentencing hearing. See Doc. No. 66-1, ¶ 13.  However, the dates on the letter are subsequent to both the change of plea and sentencing hearings.  Therefore, Weldon's evidence

8

does not support the timing of his claim that he learned of contents of the letter after the change of plea hearing but before the sentencing hearing, nor that he provided the letter to defense counsel before the sentencing hearing.   Weldon's own declaration is self-serving and contradicted by the record.   Leesa Dustin's letter is also contradicted by the record. Additionally, Dustin's statements at the sentencing hearing did not address any of the issues raised in Weldon's motion.  It is also interesting to note that, if the firearms found in Weldon's residence were in fact Leesa Dustin's, she made no effort to recover them from law enforcement during the forfeiture proceedings.  See Doc. No. 64.

On this record, Weldon cannot meet either prong of the *Strickland* standard.  Weldon has not demonstrated the performance of defense counsel was deficient.  Nor has he demonstrated prejudice.  All of his assertions are contradicted by the record and his own statements at the change of plea and sentencing hearings.  It was Weldon's own statements to law enforcement that he had guns and drugs in his home that resulted in the search of his house.  See Doc. No. 76-1.   Defense counsel was highly effective at achieving a favorable outcome under the circumstances--a sentence well below the advisory Sentencing Guideline range – despite Weldon's significant criminal history.  Weldon's claims of ineffective assistance fail.

## IV.    **REQUEST FOR HEARING**

Weldon has requested the Court hold an evidentiary hearing on his motion.  28 U.S.C. § 2255 provides a hearing is required "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  No hearing is required when the claim is inadequate on its face or if the record, files, and motion conclusively demonstrate the defendant is not entitled to the relief he seeks.  Anjulo-Lopez v. United States,

541 F.3d 814, 817 (8th Cir. 2008). In this case, the record is well-established and adequate for full consideration of the issues raised in the motion. The record, including the affidavit from defense counsel, clearly contradicts Weldon's claims and renders them devoid of merit. A careful review of all the materials submitted by the parties, the transcripts, the PSR, and the record as a whole leads the Court to conclude that an evidentiary hearing is unnecessary for a full consideration of the issues raised in the motion.

## V. CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant case law. For the reasons set forth above, the Defendant's motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 65) is **DENIED**. In addition, the Court issues the following **ORDER**:

(1.) The Court certifies that an appeal from the denial of this motion may not be taken *in forma pauperis* because such an appeal would be frivolous and cannot be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

(2.) Based upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Therefore, a certificate of appealability will not be issued by this Court. Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983). If the Defendant desires further review of his motion he may request the issuance of a certificate of appealability by a circuit judge with the Eighth Circuit Court of Appeals.

**IT IS SO ORDERED.**

Dated this 25th day of March, 2026.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court